SOERY & CAMPBELL, for the use, &c. *v.* E. FRIEND.

*A defendant examined on facts and articles, may answer as to a fact tending to his defence, when the fact is closely linked to the fact on which he had been interrogated.*

APPEAL from the District Court of Ouachita, *Richardson,* J.

*McGuire & Ray,* for plaintiffs and appellants. *Morrison,* for defendant.

MERRICK, C. J. The plaintiffs, as acceptors, have instituted the present action upon an account stated upon a bill of exchange dated Trenton, May 5th, 1853, drawn on themselves at New Orleans and made payable twelve months after date, to the order of *W. H. Rogers,* by whom it was endorsed, for fifteen hundred dollars.

The defendant in his answer, alleges that the draft was given for the purpose of enabling the plaintiffs, who were commission merchants, to raise money after accepting it, by throwing it in the market, and the money raised on it was to be advanced to *William H. Rogers,* then a merchant at Trenton, La., to enable him to carry on his commercial business, and *Rogers* was to provide means to meet it at its falling due; that the plaintiffs shortly afterwards failed without having accepted, negotiated or paid said draft, and that the plaintiffs never having advanced anything to *Rogers* after the receipt of the draft, are fraudulently attempting to collect the same.

SOERY
v.
FRIEND.

The plaintiff, in order to rebut the presumption that he had funds of the defendant to meet this draft, propounded the following questions to defendant, viz:

1st. "Did you ever ship or consign any produce, goods, or effects of any kind to Messrs. Soery & Campbell, of New Orleans? If so, state when, what it was, and for what amount?"

2. "Did you ever deposit any amount of money in the hands of Messrs. Soery & Campbell, of New Orleans, for any purpose whatever? If so, state the amount when it was, and for what purpose?"

To the first interrogatory, defendant answered: " I did consign four bales of cotton to plaintiff about January, 1854, but no part of it was intended for the payment of the draft sued on, as it was well understood by plaintiffs and defendant, that W. H. Rogers was to provide for the payment of the draft sued on, and not defendant. Plaintiffs paid over to defendant the proceeds of the four bales of cotton, in the spring of 1854, in supplies and in money."

Answer to second interrogatory. " I never deposited any other funds with plaintiff except the few bales of cotton, and that was for the purpose of paying for some groceries furnished by plaintiffs to defendant, and in money, as stated in answer to first interrogatory."

The plaintiff moved to strike out a portion of the answer to first interrogatories, and propounded this further interrogatory, viz:

" Did you ever have any conversation with either of the plaintiffs in this case in relation to the draft sued on in this case? If so, when did such conversation take place? Where did it take place, and what was said about it, and with whom did you have such conversation?"

To this the defendant answered, " I did have a conversation with one of the plaintiffs in this case, in relation to the draft sued on, which took place, as near as I can recollect, about the month of July, 1854. It took place at Forksville, in the parish of Ouachita. The words used in the conversation I cannot remember exactly, but the substance of it was, that I would do what I could to induce W. H. Rogers to ship them cotton for his indebtedness to plaintiff, and that I did not consider myself bound for the draft sued on, and that plaintiff need not look to me for it. He then told me, that if I had not mentioned it to him, he would not have mentioned it to me, and that if I would ship them, the plaintiffs, my cotton crop of 1854, that no part of it should be applied as a payment on the drafts sued on."

The District Judge did not err in refusing to strike out all that part of defendant's answer to the first interrogatories, commencing with the words " but no part of it," and ending with the words " sued on and not defendant." The object of the interrogatory was to destroy the presumption that Soery & Campbell had funds of the defendant, out of which the draft was paid by them.

The reason why the defendant did not place the plaintiffs in funds, arising as it did from an understanding between the parties, was a fact tending to his defence, which was closely linked to the fact on which he had been interrogated. It was a matter standing as a partial answer to the supposed liability of the defendant, arising from his neglect to place the drawees in funds. Haynes v. Heard, 3 An. 648.

The defendant has filed an answer, praying that the judgment of nonsuit may be amended, and that he have a final judgment in his favor.

We do not think the judgment should be disturbed. It is evident that the draft was drawn by the defendant for some purpose. If he were a drawer for the accommodation of *Rogers*, as he alleges, he would still be responsible to the acceptors in the event *Rogers* did not place them in funds. The answer to the first interrogatory does not clearly show 'that *at the time the bill of exchange was drawn*, that the defendant was not to be liable as between himself, and the acceptor for the amount of the bill in the event the principal debtor, *Rogers*, should fail to furnish the funds which it was naturally expected by all parties he would do. But the defendant has not said, that if *Rogers* did not furnish the funds, that he himself was not to be responsible for the failure. It appears to us that an accommodation drawer, who relies upon the payee of the draft to furnish the funds to take it up at maturity, must be considered as between the other parties to the instrument, as a principal remitting his funds through the agency of such payee. If the drawer would have been responsible to a *bona fide* holder had the draft been dishonored, we cannot see why he should not, in the absence of all agreement to the contrary, be in like manner responsible to the acceptors who have taken up the same at maturity.

If the defendant relies upon a release or remission of the debt by the plaintiffs, his answers do not establish this with sufficient clearness. They might have been very willing to receive and sell the defendant's crop as factors, and leave the question of indebtedness for the decision of the courts. C. C. 2200, 2201.

But the draft produced does not appear to have been accepted by the plaintiffs, although they have charged commissions for accepting the same. This circumstance, taken in connection with the defendant's answers to the interrogatories, creates a doubt whether the draft was ever put in circulation. If it remained in the hands of *Soery & Campbell* until maturity, it is at least incumbent on them to show that the amount of the draft was placed to the credit of *Rogers*. They could have no claim against *Friend*, until they had either paid the draft to the holder, or if they retained the same, placed it as above mentioned to the credit of, and thereby paid it to *Rogers*, the first endorser and payee.

On the whole, we are satisfied that the judgment of the lower court should be affirmed.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be affirmed, with costs.